**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-02121-REB

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

JEFFORY D. SHIELDS (a/k/a Jeffrey D. Shields) and
GEODYNAMICS, INC. (f/k/a or d/b/a Geodynamics Exploration, Inc.),

     Defendants,

and

GEODYNAMICS, INC. JOHNSTON'S CORNER #1 and #2 JOINT VENTURE,
GEODYNAMICS, INC. HUSKIE #1 JOINT VENTURE,
GEODYNAMICS, EXPLORATION, INC. TRUMPETER #1 and #2 JOINT VENTURE,
GEODYNAMICS, INC. EVDA #1 JOINT VENTURE,
FLORIBAMA OIL CORPORATION,
CARBOTEC, INC.,
TRITON ENERGY ASSET MANAGEMENT, INC. (d/b/a Triton Energy Asset
     Management, LLC),
GEODYNAMICS PROPERTY MANAGEMENT, LLC,
T.E.A.M. PROPERTY MANAGEMENT, LLC (d/b/a T.E.A.M. Property Management),
S&P ENERGY, LLC,
AURUM ENERGY ASSOCIATES, LLC, and
UNUM, LLC,

     Relief Defendants.

**ORDER GRANTING MOTION TO DISMISS**

**Blackburn, J.**

     The matter before me is **Defendant GeoDynamics, Inc.'s Motion To Dismiss**


**Pursuant to Fed. R. Civ. P. 12(b)(6)** [#28],[1] filed September 27, 2011. I grant the motion.

## I. JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" ***Kansas Penn Gaming, LLC v. Collins***, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). Pursuant to the dictates of ***Twombly***, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Twombly***, 127 S.Ct. at 1974). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and

---

[1] "[#28]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." **Kansas Penn Gaming**, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true. **McDonald v. Kinder-Morgan, Inc.**, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss. **Ashcroft v. Iqbal**, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted). **See also Robbins v. Oklahoma**, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted). Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949. **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original). For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965). The standard will not be met where the allegations of the complaint are "so general that they

encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248. Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." **Id.**

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." **Iqbal**, 129 S.Ct. at 1950; **see also Kansas Penn Gaming**, 656 F.3d at 1215. Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." **Dias v. City and County of Denver**, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting **Twombly**, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. ANALYSIS

This action involves alleged securities fraud in the operation of four oil and gas exploration and drilling ventures. Each of the four joint ventures is governed by a separate but comparable Joint Venture Agreement ("JVA") (**see Def. Motion App.**, Exh. A), as well as a Confidential Information Memorandum ("CIM") (**see id.**, Exh. B).[2] The SEC maintains that, despite their ostensible organization as joint ventures, the investments in these ventures are in fact "investment contracts," and therefore come within the definition of "securities" as that term is defined by the Securities Act of 1933, 48 Stat. 74, and the Securities Exchange Act of 1934, 48 Stat. 881. **See** 15 U.S.C. §§

---

[2] These documents are referenced in the SEC's complaint (**see Compl.** ¶ 36-37 at 11-12 [#1], filed August 15, 2011) and central to its claims in this lawsuit. I therefore may and do consider these documents in resolving the instant motion. **Prager v. LaFaver**, 180 F.3d 1185, 1189 (10th Cir.), **cert. denied**, 120 S.Ct. 405 (1999).

4

77b(1) & 78c(a)(10).  **See also Tcherepnin v. Knight**, 389 U.S. 332, 342, 88 S.Ct. 548, 556, 19 L.Ed.2d 564 (1967) (noting that definitions of "security" under Securities Act and Exchange Act are functionally equivalent).   Because I find to the contrary, I grant defendants' motion to dismiss for failure to state a claim.

An investment contract is "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."  **SEC v. W.J. Howey Co.**, 328 U.S. 293, 298-99, 66 S.Ct. 1100, 1102-03, 90 L.Ed. 1244 (1946).  The operative definition is purposefully broad and intended to reach "[n]ovel, uncommon, or irregular devices, whatever they appear to be."  **SEC v. C.M. Joiner Leasing Corp.**, 320 U.S. 344, 351, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1941).  The analysis is guided by "a flexible rather than a static, principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."  **Howey**, 66 S.Ct. at 1103.  Accordingly, the court must focus on the "economic realities of the underlying transaction and not on the name it carries."  **United Housing Foundation, Inc. v. Forman**, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975).

As in most cases in which this issue becomes central, the only point of contention here is whether investors were led to expect profits "solely from the efforts of others."  **See Kline Hotel Partners v. Aircoa Equity Interests, Inc.**, 725 F.Supp. 479, 481 (D. Colo. 1989).  As interpreted by later precedents, this requirement has been

relaxed somewhat, *see Robinson v. Glynn*, 349 F.3d 166, 170 (4th Cir. 2003),[3] and has come to focus on whether the investors retain control over significant decisions of the enterprise. "The question is whether an investor, as a result of the investment agreement itself or the factual circumstances that surround it, is left unable to exercise meaningful control over his investment." *Id. See also Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

Given these standards, "[a] general partnership interest is presumed not to be an investment contract because a general partner typically takes an active part in managing the business and therefore does not rely solely on the efforts of others." *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 755 (11th Cir. 2007). Nevertheless, the Tenth Circuit has cautioned that the focus of the inquiry is not solely on "whose efforts actually affected the success or failure of the enterprise," *Maritan v. Birmingham Properties*, 875 F.2d 1451, 1457 (10th Cir. 1989), but that instead, "[c]onsideration must be given to control over the factors essential to the success of the enterprise,"*Crowley v. Montgomery Ward & Co.*, 570 F.2d 877, 880 (10th Cir. 1978). In particular, because "[t]he principal purpose of the securities acts is to protect investors by promoting full disclosure of information necessary to informed investment decisions[,] . . . access to information about the investment, and not managerial control, is the most significant factor." *Maritan*, 875 F.2d at 1457 (citation and internal citations and quotation marks omitted). "The strong presumption that an interest in a general partnership is not a

---

[3] "Since *Howey*,. . . the Supreme Court has endorsed relaxation of the requirement that an investor rely only on others' efforts, by omitting the word 'solely' from its restatements of the *Howey* test. And neither our court nor our sister circuits have required that an investor . . . expect profits 'solely' from the efforts of others." *Robinson*, 349 F.3d at 170 (internal citations omitted).

security can only be overcome by evidence that the general partners were rendered passive investors because they were somehow precluded from exercising their powers of control and supervision." **Banghart v. Hollywood General Partnership**, 902 F.2d 805, 808 (10th Cir. 1990).

In determining whether sufficient allegations have been made to overcome this presumption, the proper focus is on the rights provided in the contract itself:

> [R]egardless of the control actually exercised, if a partnership agreement retains real power in the general partners, then an investment in the general partnership is not a security. Thus, our determination of whether a general partnership interest can be characterized as a security turns on the partnership agreement.
>
> When a partnership agreement allocates powers to general partners that are specific and unambiguous and those powers provide the general partners with access to information and the ability to protect their investment, then the presumption is that the general partnership is not a security. As the court in **Rivanna** stated, "[e]ven when general partners do not individually have decisive control over major decisions, they do have the sort of influence which generally provides them with access to important information and protection against a dependence on others."

*Id.* 808 (internal citations omitted). **See also Maritan**, 875 F.2d at 1458 (noting that "the contract between the parties [is] the proper focal point, rather than actual participation"). Investors' expectations of control are analyzed as of the time the interest is sold, although evidence regarding the actual operation of the venture may shed light on the question of how control was allocated at the outset. **See Merchant Capital**, 483 F.3d at 756.

The SEC does not contend that the JVAs did not afford the joint venturers a significant degree of control over the operations of the joint venture. Instead, the thrust of its argument is that these powers were rendered insubstantial or illusory as a result of defendants' alleged fraud. Initially, it points out that many of the investors in the joint ventures are inexperienced in the oil and gas industry and thus allegedly entirely reliant on GeoDynamics and Shields. (**Compl.** ¶¶ 87-93 at 25-27.) Yet this fact, standing alone, is relevant only when "the partners are so dependant on a particular manager that they cannot replace him or otherwise exercise ultimate control." **Williamson v. Tucker**, 645 F.2d 404, 424 (5th Cir.), **cert. denied**, 102 S.Ct. 396 (1981). **See also Rivanna Trawlers Unlimited**, 840 F.2d at 242 n.10 ("In a word, a general partner is not dependent only on the degree of his own business sophistication in order to exercise intelligently his partnership powers.").[4] More importantly, such dependence must have been part of the original expectations at the inception of the transaction "and not some subsequent decision to delegate partnership duties." **Williamson**, 645 F.2d at 424 n.14 (citation and internal quotation marks omitted). Here, the JVAs retained to the joint venturers the ability to control the joint ventures through the exercise of their substantial voting rights.[5] **See Gordon v. Terry**, 684 F.2d 736, 741 (11th Cir. 1982) ("An investor

---

[4] Nor is there any allegation that joint venturers were prevented from seeking outside assistance to better understand the industry or any particular management decision if they felt it beyond their ken. **Robinson**, 349 F.3d at 171. **See also Maritan**, 875 F.2d at 1459 (noting that although general partner "was not told about the mortgage on the property, [] he surely was not prevented from finding out"); **Rivanna Trawlers Unlimited**, 840 F.2d at 242 n.10 ("To the extent a partner needs advice or assistance in the exercise of his powers, he is of course free to consult with more knowledgeable partners or third persons, or to employ accountants and lawyers.")

[5] For example, GeoDynamics, as Managing Venturer, may be removed or substituted without cause by a simple majority vote. (**Def. Motion App.**, Exh. A ¶ 5.7 at 51.) Also by a simple majority, the joint venturers may develop rules and procedures to provide for meetings at which a vote is sought or

who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others."), **cert. denied**, 103 S.Ct. 1188 (1983).

The SEC alleges, however, that the joint venturers cannot exercise these voting rights meaningfully as a result of defendants' fraud. Defendants allegedly control the information presented on conference calls and the presentation of voting proposals in such a way that investors have no ready alternative to voting against its proposals. Moreover, defendants allegedly have concealed their pervasive misappropriation of investor funds, misrepresented the status and feasibility of proposed projects and concealed the actual intended use of investor funds, and restricted and/or denied investors access to financial statements and other information necessary for them to exercise their powers of control and supervision. (**Compl.** ¶¶ 94-98 at 28-30.)

The SEC's allegations are certainly significant and troubling, and assuming them to be true, as I must for purposes of this motion, they set forth a pervasive fraud on the joint venturers. Nevertheless, they do not allege facts sufficient to make out a plausible claim that the investments at issue here are securities. The SEC's allegations all revolve around post-investment developments. Such allegations are relevant only to the extent they shed light on the powers the joint venturers reserved to themselves at the time they entered into the JVAs. *See Merchant Capital*, 483 F.3d at 756.

---

required, and those holding 10% or more of the units may call meetings. (*Id.*, Exh. A ¶ 4.11 at 50 & ¶ 5.6 at 51.) GeoDynamics cannot sell, transfer, or assign its interest in the joint venture without the consent of 51% of the venturers. (*Id.*, Exh. A ¶ 6.1 at 52.) In addition, each joint venturer has all rights and obligations of a General Partner under the Texas law. (*Id.*, Exh. A ¶ 5.2 at 51.) *See* TEX. BUS. ORG. CODE §§ 152.201 - 152.214. *See also Rivanna Trawlers Unlimited*, 840 F.2d at 242 n.8 (noting that terms of partnership agreement were supplemented by provisions of Virginia partnership law).

That is not the nature of the SEC's theory, however.[6]  Instead, the SEC has flipped the relevant inquiry on its head, reasoning backwards from the alleged fraud itself to prove that the investors lacked control, and thus concluding that the investments are securities.  Yet if the SEC could back its way into a claim of securities fraud in this manner, it is unlikely that *any* fraudulent scheme could be excluded from the ambit of the federal securities laws.  The securities laws, however, do not provide a broad federal remedy for all common law frauds, no matter how egregious.  **See Marine Bank v. Weaver**, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982).  As pleaded here, any relief from defendants' alleged fraud lies under state, not federal, law.

Based on the foregoing considerations, I find and conclude that the SEC's allegations here are insufficient to state a plausible claim that the joint venture interests at issue in this case are securities.  Defendants' motion to dismiss therefore will be granted.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant GeoDynamics, Inc.'s Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** [#28], filed September 27, 2011, is **GRANTED**;

2. That plaintiff's claims in this lawsuit are **DISMISSED WITHOUT PREJUDICE**;

3. That judgment **SHALL ENTER** on behalf of defendants, Jeffory D. Shields (a/k/a Jeffrey D. Shields) and GeoDynamics, Inc. (f/k/a or d/b/a Geodynamics

---

[6] Although the *Merchant Capital* court did examine post-investment events in finding that the general partnership interests at issue there were in fact securities, it did so only as a way of highlighting the lack of real control reserved to the non-managing partners in the investment contract itself.  **See** *Merchant Capital*, 483 F.3d at 757-60.

Exploration, Inc.), and relief defendants GeoDynamics, Inc. Johnston's Corner #1 and #2 Joint Venture; GeoDynamics, Inc. Huskie #1 Joint Venture; GeoDynamics Exploration, Inc. Trumpeter #1 and #2 Joint Venture; GeoDynamics, Inc. EVDA #1 Joint Venture, Floribama Oil Corporation; Carbotec, Inc.; Triton Energy Asset Management, LLC; T.E.A.M. Property Management, LLC (d/b/a T.E.A.M. Property Management); S&P Energy, LLC; Aurum Energy Associates, LLC; and Unum, LLC, and against plaintiff, Securities and Exchange Commission, on all claims for relief and causes of action; provided, that the judgment as to these claims shall be without prejudice.

Dated September 6, 2012, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge